IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

J & J SPORTS PRODUCTIONS, INC.,

*Plaintiff*,

v.

MAYREALII, LLC,
t/a Mayreal II, LLC, t/a Borinken, t/a
Borinken Restaurant & Night Club, *et al.*,

*Defendants*.

Civil Action No. ELH-11-3345

## MEMORANDUM OPINION

This Memorandum Opinion resolves the motions to dismiss ("Motions") filed by defendants MayrealII, LLC, t/a Mayreal II, LLC ("Mayreal"), and Maynard Parker (ECF 11 & 14), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  J & J Sports Productions, Inc. ("J & J"), plaintiff, has filed an Opposition ("Opp.") (ECF 18) to the Motions.[1]  For the reasons that follow, I will grant the Motions in part and deny them in part.

### Background

According to its Amended Complaint (ECF 10), J & J enjoyed the "exclusive nationwide television distribution rights" to a nationally televised championship boxing match between Floyd Mayweather, Jr. and Juan Manuel Marquez (the "Program"), which was "telecast nationwide" on the evening of Saturday, September 19, 2009.  *See* Amended Complaint ¶ 9.  Mayreal is a business entity trading as Borinken Restaurant & Night Club in Baltimore,

---

[1]  Mayreal and Parker are represented by the same counsel, and the Motions are substantively identical.  The time for defendants to file a reply has expired.  *See* Local Rule 105.2(a); Fed. R. Civ. P. 6(d).  No hearing is necessary to resolve the Motions.  *See* Local Rule 105.6.

Maryland. *Id.* ¶ 6.   Upon information and belief, J & J alleges that Parker and a third defendant,

Henry Garcia (who has been served, *see* ECF 9, but has yet to respond), are "principals and co-

owners of the [liquor] license" for Mayreal, and each is an "officer, director, shareholder,

employee, agent, and/or other representative" of Mayreal. *Id.* ¶ 7.[2]   J & J further contends, *id.*

¶ 12:

> With full knowledge that the Program was not to be intercepted, received or
> exhibited by entities unauthorized to do so, each and every of the above named
> Defendants and/or their agents, servants, workmen or employees did unlawfully
> publish, divulge and exhibit the Program at the time of its transmission at the
> addresses of their respective establishments . . . .   Said unauthorized interception,
> publication, exhibition and divulgence by each of the Defendants were done
> willfully and for purposes of direct or indirect commercial advantage or private
> financial gain.

Along with its Amended Complaint, J & J has submitted an affidavit of an "investigator,"

Tarsha Vice, who avers that she was present at Borinken Restaurant & Night Club on September

20, 2009, between 12:35 and 12:45 a.m., and witnessed the "Mayweather VS. Marquez fight"

being shown on four televisions in the establishment.   *See* ECF 1-1.   However, Ms. Vice's

affidavit contains no specific allegations concerning Parker or Garcia.

On the strength of these allegations, J & J levels three counts against the defendants: (1)

violation of 47 U.S.C. § 605; (2) violation of 47 U.S.C. § 553; and (3) a common law tort claim

for conversion.   Mayreal and Parker advance three arguments in their Motions, which I will

address in turn.

---

[2] As attachments to its original Complaint, J & J filed a copy of a webpage of the
Maryland State Department of Assessments and Taxation, purportedly identifying Parker as
Mayreal's resident agent, and a purported copy of Mayreal's liquor license, identifying Parker
and Garcia as licensees.   *See* ECF 1-1.

**Discussion**

The purpose of a Rule 12(b)(6) motion is "'to test the sufficiency of a complaint.'" *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010) (citation omitted).  "In deciding whether a complaint will survive a motion to dismiss, a court evaluates the complaint in its entirety, as well as documents attached or incorporated into the complaint" or that are "'integral to and explicitly relied on in the complaint' [where] there [is] no authenticity challenge." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011) (quoting *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A court decides whether this standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to relief.  *A Society Without A Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011). Dismissal "is inappropriate unless, accepting as true the well-pled facts in the complaint and viewing them in the light most favorable to the plaintiff, the plaintiff is unable to 'state a claim to relief.'" *Brockington v. Boykins*, 637 F.3d 503, 505-06 (4th Cir. 2011) (citation omitted).

A.  Double Recovery

Counts I and II of plaintiff's Amended Complaint allege, respectively, violations of sections 605 and 553 of 47 U.S.C., which are provisions of the Federal Cable Act that address different modalities of so-called "cable theft."  Mayreal and Parker describe § 605 as prohibiting

"thefts or interceptions of radio communications regardless of whether or not the radio communication is sent out over a cable tv network,"[3] and § 553 as prohibiting "communication thefts or interceptions from a cable network regardless of whether or not the communication originated as a radio broadcast." Defendants argue that, although the two sections overlap, "a plaintiff cannot recover damages under both sections for the same conduct."[4] Motions at 3. Therefore, they contend: "Since the complaint only alleges a single incident, the Court should dismiss either Count I or Count II." Motions at 4.

J & J acknowledges that "the prevailing trend is that 47 U.S.C. §§ 605 and 553 reach different conduct, and thus recovery may lie under only one statute." Opposition at 3. However, plaintiff insists that while "*recovery* under both statutes ultimately may not be warranted, at the initial Complaint stage Plaintiff may present alternative forms of relief." *Id.* (emphasis in original).

Rule 8(d)(3) of the Federal Rules of Civil Procedure permits a party to "state as many separate claims . . . as it has, regardless of consistency." Therefore, I agree with plaintiff that, although it may ultimately have to choose among the theories of liability on which it will proceed, the alleged inconsistency between Counts I and II is not fatal to either count at the

---

[3] Radio communications under § 605 include digital satellite television transmissions. *See, e.g.*, *DirecTV, Inc. v. Schulien*, 401 F. Supp. 2d 906, 912-13 (N.D. Ill. 2005) ("The law is clear that digital satellite transmissions are covered by Section 605.").

[4] There is some dispute in the federal courts as to what particular activities are prohibited under each section and the degree of overlap between them. *Compare United States v. Norris*, 88 F.3d 462, 466-69 (7th Cir. 1996) (holding that sections 553(a) and 605(a) are not "overlapping statutes" and are thus mutually exclusive), *with Int'l Cablevision, Inc. v. Sykes*, 75 F.3d 123, 132-33 (2d Cir. 1996) (holding that section 605 and section 553 are not completely overlapping); *see also J & J Sports Productions, Inc. v. Brazilian Paradise, LLC*, 789 F. Supp. 2d 669, 674 (D.S.C. 2011) ("The Fourth Circuit has not addressed this specific issue . . . ."). Because determination of the precise scope of the statutes is unnecessary to rule on the Motions, I will accept defendants' characterization of the statutes for purposes of resolving the Motions.

pleading stage.  *See, e.g.*, *Swedish Civil Aviation Admin. v. Project Mgmt. Enters., Inc.*, 190 F.

Supp. 2d 785, 792 (D. Md. 2002) ("[A]lthough [plaintiff] may not recover under both contract

and quasi-contract theories, it is not barred from pleading these theories in the alternative.").

## B.  Individual Liability

Parker contends that the Amended Complaint fails to articulate facts that plausibly allege

his individual liability.  The parties appear to agree that the standard for individual liability under

the Cable Act is that the defendant "had supervision or control over the infringing activities, or

that the person reaped some commercial benefit" from the violation.  Motions at 4; *see also* Opp.

at 4 (relying upon *J & J Sports Productions, Inc. v. L & J Group, LLC*, Civ. No. RWT-09-3118,

2010 WL 816719 (D. Md. Mar. 4, 2010), in which the court stated that a Cable Act plaintiff must

show that the defendant "'had a right and ability to supervise the violations, and that she had a

strong financial interest in such activities'") (citation omitted).[5]

In support, Parker cites *J & J Sports Productions, Inc. v. 291 Bar & Lounge, LLC*, 648 F.

Supp. 2d 469 (E.D.N.Y. 2009), a Cable Act case in which the district court entered default

judgment against a business entity operating a bar, but refused to impose liability on the

---

[5] The quoted standard is the standard for vicarious liability for copyright infringement.
*See, e.g.*, *CoStar Group, Inc. v. LoopNet, Inc.*, 373 F.3d 544, 550 (4th Cir. 2004) (stating, in
copyright infringement action: "Under a theory of vicarious liability, a defendant who 'has the
right and ability to supervise the infringing activity and also has a direct financial interest in such
activities' is . . . liable.") (citation omitted).  A number of district court decisions have applied
this standard to allegations of business owner or shareholder liability for Cable Act violations.
*See, e.g.*, *J & J Sports Productions, Inc. v. Walia*, Civ. No. 10-5136-SC, 2011 WL 902245, at *3
(N.D. Cal. Mar. 14, 2011) (stating that "[i]t appears that all courts addressing the issue have
applied the copyright standard for individual liability to violations of § 553 and § 605," and
citing several unreported district court decisions).  I am unaware of a federal appellate decision
that has resolved the issue.  Because both sides agree that this standard applies, I shall assume,
without deciding, that it is applicable.  *But see J & J Sports Productions v. Resendiz*, Civ. No.
08-4121, 2009 WL 1953154, at *2 n.1 (N.D. Ill. July 2, 2009) ("[W]e are skeptical that the
doctrine of vicarious liability should be extended to broadcast piracy actions.").

individual owner of the business entity.  There, the plaintiff alleged "that the defendants willfully and unlawfully intercepted and received the signal of the Fight, and then exhibited it to its patrons in the hopes of gaining commercial advantage," but the complaint's allegation that the individual owned the entity was the "entire extent" of particular allegations against the individual.  *Id.* at 472-73.  The court reasoned: "Individual liability under the Cable Act requires that the individual authorize the underlying violations.  Put differently, the complaint must establish that the individual had a 'right and ability to supervise' the violations, as well as an obvious and direct financial interest in the misconduct."  *Id.* at 473 (citations omitted).  The court observed that "the plaintiff has made no allegation that Mr. Caba was present for the violation, that he authorized or controlled it, or that he reaped commercial profit from it," and admonished the plaintiff: "To the extent that J&J wishes to assert liability against an individual in the future, it should make adequately detailed allegations in the complaint, beyond the conclusory and vague charge of mere ownership of the offending entity."  *Id.* at 473.[6]  Parker contends that J & J's allegations of individual liability are deficient in the same manner as in *291 Bar*.

Plaintiff acknowledges the holding in *291 Bar*, but suggests that I should follow, instead, a ruling to the contrary entered in this district in *J & J Sports Productions, Inc. v. L & J Group, LLC*, *supra*, 2010 WL 816719.  In *L & J Group*, the relevant allegations of J & J's complaint were virtually identical to the allegations in the Amended Complaint in this case.  The court concluded that "the complaint—although admittedly formulaic—states a claim to relief against each of the individual Defendants that is 'plausible on its face.'"  *Id.* at *2 (quoting *Iqbal*, *supra*, 129 S. Ct. at 1949).  It reasoned: "Plaintiffs allege[d] that the individual Defendants are

_____

[6] The case law makes quite evident that J & J has been a frequent litigant under the Cable Act in recent years.

principals and co-owners of the license and that they directly unlawfully intercepted and exhibited the Program, or assisted in such activities, for commercial advantage or financial gain. Such allegations are sufficient to survive Defendants' Motion to Dismiss." *Id.* However, the court noted: "Of course, the individual Defendants may, upon a motion for summary judgment or at trial, demonstrate that they are not personally liable because they did not directly violate or assist another person in violating 47 U.S.C. §§ 553 and 605." *Id.* at *2 n.1. J & J argues that defendants' citation of *291 Bar* "[a]t best . . . establishe[s] a split in authority" and suggests that "the District of Maryland sides with Plaintiff." Opposition at 5.

To be sure, there is a division of authority on this point. Several cases, in addition to *L & J Group*, have approved the adequacy of allegations similar to those in this case of individual liability for Cable Act violations. *See, e.g.*, *J & J Sports Productions, Inc. v. Q Cafe, Inc.*, 2012 WL 215282, at *4 (N.D. Tex. Jan. 25, 2012) (holding defendant individually liable solely "due to her ownership of the Establishment's alcohol license"); *J & J Sports Productions, Inc. v. Carvajal*, Civ. No. 11-40129-FDS, 2011 WL 4499156, at *2 (D. Mass. Sept. 26, 2011) ("While it is certainly possible for the complaint to have been more precise in its wording, it is nonetheless sufficient to withstand a motion to dismiss."); *Joe Hand Promotions, Inc. v. La Nortena Restaurant, Inc.*, ____, 2011 WL 1594827, at *3 (E.D.N.Y. Mar. 28, 2011) ("As it is . . . undisputed that Luna owned La Nortena, she had 'the requisite control and financial interest to be held vicariously liable for the violation.'") (internal citation omitted); *J & J Sports Productions v. Betancourt*, Civ No. 08cv937, 2009 WL 3416431, at *2 (S.D. Cal. Oct. 20, 2009).

Conversely, there are several other cases that accord with *291 Bar*. *See, e.g.*, *Joe Hand Promotions, Inc. v. Coaches Sports Bar*, ___ F. Supp. 2d ___, 2011 WL 4381048, at *1

(E.D.N.C. Sept. 19, 2011) ("Apart from stating that Mr. Dillon is the principal of Coaches, the complaint does not mention him."); *Circuito Cerrado, Inc. v. Pizzeria y Pupuseria Santa Rosita, Inc.*, 804 F. Supp. 2d 108, ___ (E.D.N.Y. 2011) (rejecting individual liability where sole allegation with respect to individual defendant was "mere ownership of the violating entity"); *J & J Sports Productions, Inc. v. Walia*, Civ. No. 10-5136, 2011 WL 902245, at *3-5 (N.D. Cal. Mar. 14, 2011); *J & J Sports Productions, Inc. v. Brown*, Civ. No. 08-482-M, 2009 WL 3157369, at *3 (W.D. Okla. Sept. 29, 2009) (considering identical allegation to ¶ 12 of plaintiff's Amended Complaint here, quoted *supra*, and stating, "this paragraph does not state a plausible claim of individual liability"); *J & J Sports Productions, Inc. v. Torres*, Civ. No. 6:09-cv-391-ORL, 2009 WL 1774268, at *3-4 (M.D. Fla. June 22, 2009) (considering allegations similar to those in this case and stating: "[B]ased on the language J & J uses, it is possible that a 'workman' in the restaurant intercepted and de-scrambled the program on his own accord and without Torres' knowledge.  Plaintiffs in federal court are permitted to plead in the alternative, but they are not permitted to plead 'in the ambiguous.'") (internal citation omitted); *J & J Sports Productions, Inc. v. Daley*, Civ. No. 06-0238, 2007 WL 7135707, at *3-4 (E.D.N.Y. Feb. 15, 2007) ("Nor does logic support the inference that Daley as an 'officer, director, shareholder and/or principal' of Kev's had the kind of control J & J asserts.  The description is disjunctive, and there is nothing in the record to demonstrate which of those various positions, if any, Daley actually held.  As a result, there is no basis to assume that Daley enjoyed supervisory control (a shareholder or director might not have such authority), or that he had a financial stake in the business (an officer or director might not have such an interest).") (internal footnote omitted).

With the utmost respect for the ruling in *L & J Group*, I am nonetheless persuaded that *291 Bar* is correct.  As I see it, plaintiff's allegations of individual liability do not satisfy the pleading standard established by Rule 8 of the Federal Rules of Civil Procedure, and as articulated by the Supreme Court in *Ashcroft v. Iqbal, supra.*

In *Iqbal*, the plaintiff sued John Ashcroft, the former Attorney General of the United States, and several other high ranking federal officials, alleging their liability under 42 U.S.C. § 1983 for adoption of "an unconstitutional policy that subjected [plaintiff] to harsh conditions of confinement on account of his race, religion, or national origin."  129 S. Ct. at 1942.  The plaintiff alleged in his complaint that the defendants "'knew of, condoned, and willfully and maliciously agreed to subject [him]' to harsh conditions of confinement 'as a matter of policy, solely on account of [his] religion, race, and/or national origin and for no legitimate penological interest.'"  *Id.* at 1951 (quoting complaint).  The Supreme Court held that such "bare assertions" amounted to "nothing more than a 'formulaic recitation of the elements' of a constitutional discrimination claim," and that, as such, "the allegations are conclusory and not entitled to be assumed true."  *Id.* (quoting *Twombly, supra*, 550 U.S. at 555).  The Court emphasized its earlier guidance in *Twombly* with respect to the federal pleading standard: "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'  Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555, 557).

Here, as in *Iqbal*, plaintiff's allegations as to individual liability amount to mere "labels and conclusions."  Plaintiff alleges, without distinguishing between the individual defendants and Mayreal, that "[d]efendants and/or their agents, servants, workmen or employees did

unlawfully publish, divulge and exhibit the Program," and that the violation "by each of the Defendants [was] done willfully and for purposes of direct or indirect commercial advantage or private financial gain." But, this is a mere "formulaic recitation of the elements of [the] cause of action." *Twombly*, 550 U.S. at 555. Plaintiff alleges no facts to show that Mr. Parker (or, for that matter, Mr. Garcia) had personal knowledge of, or the ability to supervise and control, the alleged unlawful interception of the Program. For instance, there is no allegation that the individual defendants were present at the nightclub when the Program was shown, that they personally authorized the interception and display of the Program, or that they authorized advertisements for the display of the Program or the imposition of a cover charge to profit from the display.[7] Indeed, the only specific factual allegations made with respect to Parker and Garcia are that both are named on Mayreal's liquor license, and that Parker is Mayreal's resident agent. In addition, plaintiff alleges conclusorily and upon information and belief that Parker and Garcia are "officer[s], director[s], shareholder[s], employee[s], agent[s], and/or other representative[s]" of Mayreal.

I am cognizant that some of the factual specifics that are lacking in plaintiff's Amended Complaint may be unavailable to plaintiff in advance of discovery. But, I agree with the *291 Bar* Court that "[d]ifficulty in meeting this burden . . . is not a license to ignore and dispense with ordinary pleading requirements. If the plaintiff wishes to assert liability against an individual, it must adduce an adequate basis for doing so." 648 F. Supp. 2d at 473 n.2. In my view, plaintiff's allegations are insufficient to allege individual liability; "the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 129 S. Ct. at 1950 (quoting Fed. R.

---

[7] In fact, the affidavit of plaintiff's investigator states that there was no cover charge. *See* ECF 1-1.

Civ. P. 8(a)(2)).   Accordingly, I will dismiss, without prejudice, plaintiff's claims against Mr. Parker.

Moreover, although Mr. Garcia has yet to appear in this case and did not join in Parker and Mayreal's Motions, I will also dismiss plaintiff's claims against Mr. Garcia, without prejudice; plaintiff's allegations as to Garcia's liability are indistinguishable from those against Parker.   Notably, plaintiff has had a full opportunity to brief the sufficiency of the allegations and, as a matter of law, they are equally deficient as to Garcia.   *See Eriline Co. S.A. v. Johnson*, 440 F.3d 648, 655 n.10 (4th Cir. 2006) ("[A] district court may *sua sponte* dismiss a complaint for failure to state a claim. . . .   Where the face of a complaint plainly fails to state a claim for relief, a district court has 'no discretion' but to dismiss it.") (citing 5A WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1357 (2d ed. 1990)); *see also Taylor v. Acxiom Corp.*, 612 F.3d 325, 340 (5th Cir. 2010) ("While the district court did dismiss *sua sponte* some defendants who did not join the motion to dismiss, there is no prejudice to the plaintiffs in affirming the judgment in its entirety because the plaintiffs make the same allegations against all defendants."); *Clinton Cmty. Hosp. Corp. v. S. Md. Med. Ctr.*, 374 F. Supp. 450, 453-54 (D. Md. 1974) (dismissing claim as to all defendants where arguments made by one defendant for dismissal "apply equally to the [other] defendants . . . [and] have been exhaustively discussed by the plaintiff").

I hasten to note, however, that the ultimate differences between this case and *L & J Group* may be quite insignificant.   In *L & J Group*, although the court permitted the claims against the individual defendants to proceed, it observed that they "may, upon a motion for summary judgment or at trial, demonstrate that they are not personally liable because they did

not directly violate or assist another person in violating 47 U.S.C. §§ 553 and 605." *L & J Group*, 2010 WL 816719, at *2 n.1.  Here, although I am dismissing the claims against the individual defendants, J & J may possess sufficient information to support an amended complaint that adequately alleges a factual basis for their individual liability.

Rule 15(a)(2) of the Federal Rules of Civil Procedure instructs courts to "freely give leave [to amend] when justice so requires."  Accordingly, I will grant plaintiff leave to file, within fourteen days, an amended complaint with respect to Parker and/or Garcia.  Alternatively, because plaintiff may learn, through discovery, additional information supporting a claim of individual liability as to Mr. Parker, Mr. Garcia, or other individuals, plaintiff may, at a later time, move for leave to file an amended complaint to add additional defendants.[8]  Thus, in both this case and *L & J Group*, the question of whether plaintiff's initial allegations of individual liability are well pleaded may have little practical correlation with whether individual defendants ultimately are found liable to plaintiff.

### C.  Allegations of Cable Act Violation

Finally, Mayreal argues that the Amended Complaint fails to state a claim under § 605, § 553, or for conversion, "because the complaint does not contain any facts describing or explaining the means by which Mayreal II was able to intercept, receive or assist in another's receiving the broadcast of the Fight."  Motions at 6-7.  Mayreal suggests that the allegation "that an affiant purportedly observed the Fight being shown is insufficient to state a cause of action against Mayreal II, under the FCA and at common law," and faults plaintiffs for failing to "allege that the Fight was a radio communication or that specialized equipment was required to receive

---

[8] Of course, the Court intimates no opinion as to how it will rule on such a motion.

the broadcast," and for failing "to state facts to demonstrate Mayreal II reaped commercial benefit from the alleged unlawful interception." *Id.* at 7.

In response, plaintiff argues that it has alleged the specific place and date upon which the alleged violations occurred, has alleged that Mayreal intercepted the Program with knowledge that it was not authorized to do so, and has alleged that Mayreal did so for commercial advantage or financial gain. *See* Opp. at 5. J & J argues that it is unnecessary, at the pleading stage, for it to specify the precise method of interception but that, if it were necessary to do so, J & J has done so by pleading, in the alternative, violations of both § 605 and § 553, thereby alleging "a satellite and[/or] cable interception." *Id.* at 6. With respect to whether the Amended Complaint adequately alleges that Mayreal reaped commercial benefit or financial gain from the violation, plaintiff argues that this factor is relevant to an award of enhanced statutory damages, *see* 47 U.S.C. §§ 605(e)(4)(C)(ii), 553(c)(3)(B), but is not relevant to liability. *See* Opp. at 6. Moreover, plaintiff contends that "it would be virtually impossible to plead such information as it is necessarily in the possession of Defendants and may only be obtained through discovery." *Id.* at 7. With respect to Count III, J & J notes that Mayreal makes "no real argument with respect to the conversion claim," and suggests that a method of interception is "not a component of a conversion cause of action." *Id.* at 8.

I agree with plaintiff that, to the extent that a method of interception must be alleged under plaintiff's Cable Act causes of action, plaintiff has done so by pleading violations of § 605 and § 553 in the alternative. Plaintiff's complaint sufficiently states causes of action against Mayreal under the Cable Act. At the pleading stage, a plaintiff is required only to allege "'enough fact[s] to raise a reasonable expectation that discovery will reveal evidence' of the

alleged activity" of the defendant.  *US Airline Pilots Ass'n v. Awappa, LLC*, 615 F.3d 312, 317

(4th Cir. 2010) (quoting *Twombly*, *supra*, 550 U.S. at 555).  With respect to Mayreal, plaintiff

has done so, by alleging that the Program was unlawfully intercepted and displayed by Mayreal

at its establishment, without authorization from plaintiff, on a particular date and at a particular

time.  The parties may explore the factual underpinnings of plaintiff's claims in greater detail

through discovery.  Counts I and II will not be dismissed as to Mayreal.

With respect to plaintiff's common law conversion claim (Count III), I agree with

plaintiff that Mayreal has not advanced any specific argument that plaintiff's pleading is

improper, other than the allegations of insufficient pleading that I have already rejected with

regard to plaintiff's federal claims.  Accordingly, I will not dismiss Count III against Mayreal.[9]

## Conclusion

For the foregoing reasons, I will grant defendants' Motions in part and deny them in part.

In particular, I will not dismiss plaintiff's claims against Mayreal.  I will dismiss plaintiff's

claims against the individual defendants, Mr. Parker and Mr. Garcia, but I will grant plaintiff

---

[9] I note that other courts have dismissed state law conversion claims in Cable Act cases where the underlying state law did not recognize the tort of conversion with respect to intangible property.  *See, e.g.*, *Joe Hand Promotions, Inc. v. Lynch*, ___ F. Supp. 2d ___, 2011 WL 5386358, at *3-5 (N.D. Ill. Nov. 7, 2011) (dismissing common law conversion claim under Illinois law in Cable Act case, because "Illinois courts have not yet extended the tort of conversion to intangible property like television programming").  To the extent that a similar analysis is applicable here, it appears to be debatable, at best, whether Maryland courts would recognize a conversion claim for intangible property such as the Program.  *See, e.g.*, *Brass Metal Products, Inc. v. E-J Enters., Inc.*, 189 Md. App. 310, 339-40, 984 A.2d 361, 378-79 (2009) (stating that the tort of conversion extends only "'to the type of intangible property rights that are merged or incorporated into a transferable document'" and does not "'cover completely intangible property rights'" where "'the relevant document itself has not been transferred'") (quoting *Allied Inv. Corp. v. Jasen*, 354 Md. 547, 731 A.2d 957 (1999)).  Because these issues have not been addressed by the parties, however, I need not discuss them further at this juncture.

leave to file an amended complaint with respect to Parker and/or Garcia.   An Order

implementing my ruling follows.


Date:   February 1, 2012                            _____/s/_____

                                                    Ellen Lipton Hollander
                                                    United States District Judge